Ralph B. SHANK, Trustee for Nelson Bunker Hunt Trust Estate, Petitioner,

v.

FEDERAL POWER COMMISSION, Respondent.

No. 15832.

United States Court of Appeals Fifth Circuit.

June 30, 1956.

Rehearing Denied Aug. 21, 1956.

**831**

Ralph B. Shank, Dallas, Tex., Robert E. May, Washington, D. C., William S. Richardson, Shank, Dedman & Payne, Dallas, Tex., Wheat, May & Shannon, Washington, D. C., for petitioner.

Willard W. Gatchell, Gen. Counsel for Federal Power Commission, William J. Grove, Asst. Gen. Counsel, C. Louis Knight, Atty., Lambert McAllister, Asst. Gen. Counsel, Washington, D. C., for respondent.

Before BORAH, RIVES and BROWN, Circuit Judges.

BORAH, Circuit Judge.

Petitioner herein has invoked the jurisdiction of this Court under Section 19 (b) of the Natural Gas Act, 15 U.S.C.A. § 717r(b), to review two letter-orders of the Federal Power Commission dated July 1, 1955, and July 8, 1955, respectively.

The material facts are these: Petitioner has an interest in two producing gas wells in Starr County Texas, which it operates under joint operating and gas processing agreements with Sun Oil Company. Under these agreements, Sun Oil gathers petitioner's gas into its field gathering system and runs it through its gas processing plant also located in Starr County. These agreements provide that during such time as petitioner fails to take or cause to be taken any portion of its residue gas, Sun Oil at its election may sell it for the account of petitioner, or may purchase such gas for its own account, or may refuse to receive or discontinue the receiving of petitioner's gas to the extent of its failure to take the residue gas. The agreements further provide that Sun Oil has at any time the right to exercise any one or more of said options. As of June 7, 1954, petitioner had failed to take or cause to be taken from the processing plant its residue gas and on that date Sun Oil was exercising its election to dispose of such gas along with its own, by selling it to Transcontinental Gas Pipeline Corporation at a price of approximately 7 cents per Mcf. pursuant to the terms of Sun Oil's gas sales contract with Transcontinental and subject to both petitioner's and Sun Oil's right to terminate such sales of petitioner's gas at will.

On June 7, 1954, the Supreme Court handed down its decision in Phillips Petroleum Company v. Wisconsin, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035. Thereafter and as set forth at length in Magnolia Petroleum Company v. Federal Power Commission, 5 Cir., 236 F.2d 785, the Commission issued its series of 174– Orders in which it promulgated rules and regulations applicable to "independent producers" [1] of natural gas subject to the jurisdiction of the Commission. Among other things these rules and regulations prescribed that: (1) the terms and conditions of service and all rates and charges effective on and after June 7, 1954, for the transportation and sale of natural gas in interstate commerce were to be set forth in a rate schedule to be filed with the Commission, and "rate schedule" was defined to mean "the basic contract and all supplements or agreements amendatory thereof, effective and applicable on and after June 7, 1954 * * *"; (2) no change in the June 7, 1954, rates may be made except after thirty days' notice to the Commission and subject to its right to suspend such change; (3) independent producers should apply to the Commission for certificates of public convenience and necessity covering the sale of such gas as is subject to the jurisdiction of the Commission; and (4) sales or services rendered by independent producers must be continued until termination was given the express approval of the Commission in accordance with Section 7(b) of the Act, 15 U.S.C.A. § 717f(b).

In compliance with these regulations, petitioner on October 15, 1954, and with jurisdictional reservations, filed with the Commission all of its contracts with Sun Oil which were effective on and after June 7, 1954, together with the existing contracts between Sun Oil and Transcontinental. In addition, petitioner with like jurisdictional reservations filed an application for a certificate of public convenience and necessity which included, *inter alia,* petitioner's sales of natural gas which were made to Transcontinental under the documents described above. Meanwhile, petitioner had negotiated a new contract to sell its residue gas to Tennessee Gas Transmission Company, beginning on July 15, 1955. And in view of the fact that its initial filings had not been acted upon by the Commission, petitioner on June 13, 1955, and with full reservation of its original jurisdictional objections, filed a "Notice of Withdrawal of Application for Initial Certificate of Public Convenience and Necessity, etc." insofar as it affected petitioner's previously filed rate schedule covering the sales of its gas by Sun Oil to Transcontinental. On the same day petitioner also filed an amendment to its application for initial certificate of public convenience and necessity in which it requested that it be authorized to sell natural gas to Transcontinental until July 15, 1955, but not afterwards. Simultaneously with the filing of the partial withdrawal notice and the amendment to its application for initial certificate, petitioner also filed with the Commission the new contract with Tennessee Gas together with an application for an additional certificate of public convenience and necessity to cover its sale of residue gas from the processing plant to Tennessee Gas in accordance with the new gas sales contract.

Following the receipt of these supplemental filings, the Commission on July 1, 1955, and July 8, 1955, issued the two letter-orders sought to be reviewed herein. By the first order, the Commission rejected petitioner's request to withdraw a portion of its application for an initial certificate of public convenience and necessity and stated that the Commission considered it as a request for authority to abandon service under Section 7(d) of the Act. The Commission noted that petitioner's application for authority to

---

4. The term "independent producer" was defined in the regulations, 18 C.F.R. § 154.81, as "any person as defined in the Natural Gas Act who is engaged in the production or gathering of natural gas and who transports natural gas in interstate commerce or sells natural gas in interstate commerce for resale, but who is not primarily engaged in the operation of an interstate pipeline."

sell natural gas to Tennessee Gas "involves the gas now sold to Transcontinental" and it requested petitioner to supplement its June 13, 1955, filing with evidence showing that the present or future public convenience and necessity permits the abandonment of sales to Transcontinental together with statements of position by Transcontinental and Tennessee Gas in regard to this abandonment. The second order, in material part, permitted petitioner to withdraw the previously filed rate schedule consisting of petitioner's agreements with Sun Oil and the latter's contracts with Transcontinental on the ground that petitioner was not a signatory party to the basic sales contract between Sun Oil and Transcontinental.

Agreeable to the provisions of Section 19(a) of the Natural Gas Act, petitioner duly applied for a rehearing of these orders, and thereafter the Commission by letter-order dated August 25, 1955, affirmed its previous action, denied petitioner's request for rehearing and asserted that the above matters would be set for hearing as promptly as possible.[2]

Subsequent to the denial of its application for rehearing, petitioner filed the within petition for review, in which it attacks the lawfulness of the orders of July 1 and July 8, 1955, on numerous grounds which in brief it compresses into the following assignments of error:

"1. The Commission's orders violate the statutory scheme of rate making and rate changing prescribed by the Natural Gas Act, because such orders deprive Petitioner of the right to initiate rates and changes in rates.

"2. The Commission has no authority to prohibit Petitioner from terminating a sale of natural gas where none of its facilities are subject to the jurisdiction of the Commission and the sale is not rendered by means of any of its facilities subject to the jurisdiction of the Commission.

"3. Petitioner is not engaged in the sale *in* interstate commerce of natural gas for resale within the meaning of the Natural Gas Act.

"4. The Commission has no authority to require Petitioner to obtain a certificate of public convenience and necessity because petitioner does not engage in any transportation or sale of natural gas subject to the jurisdiction of the Commission nor does it have any facilities subject to the jurisdiction of the Commission.

"5. The Commission has no authority to suspend the effectiveness of Petitioner's initial rate schedule filing to sell natural gas to Tennessee Gas Transmission Company without notice, hearing and findings."

On December 2, 1955, and in compliance with the requirements of Section 19(b) of the Natural Gas Act the Commission certified to this Court a transcript of the record. Five days thereafter it notified petitioner that a formal hearing would be held on January 4, 1956, concerning the matters involved and the issues presented by petitioner's aforementioned applications. On the day fixed for hearing petitioner moved that the proceeding be abated and stayed pending final disposition of this petition for review. The presiding examiner in turn certified the motion to the Commission for decision but refused to recess the hearing and the hearing was

2. The letter-order set forth the following statement with respect to the Notice of Withdrawal dated June 13, 1955: "In view of your insistence that your pleading entitled "Notice of Withdrawal" (of a portion of your application in Docket No. G–4558) was not intended to be and should not be considered as a petition filed pursuant to Section 7(b) of the Natural Gas Act, we will not now con-sider it as such application. However, if the service to the Transcontinental Gas Pipe Line Corporation, which is the subject matter of the proceeding at Docket No. G–4558, is to be abandoned, it will be necessary for you to file a petition to abandon such service in accordance with Section 7(b) of the Natural Gas Act. Rejection of your Notice of Withdrawal is affirmed."

had and completed on the following day. Thereafter in due course the petitioner's motion was denied by the Commission. Following this action the Commission filed a motion to dismiss the petition for review on the ground that the issues raised therein are the same as some of those involved in the proceedings now pending before the Commission. In support of its motion the Commission vigorously insists that petitioner is prematurely seeking a judicial review without having first exhausted its administrative remedy and that by resorting to this Court before the Commission had set the date for hearing and prior to its decision and the issuance of a definitive order in the pending proceedings before it, petitioner is attempting to substitute this Court for the Commission as the tribunal to hear and determine what Congress declared the Commission should hear and determine in the first instance. Petitioner on the other hand contends that the motion to dismiss is based upon facts not appearing in the certified record and that the Commission, having certified the record, may not oust this Court of the exclusive jurisdiction vested in it under Section 19(b) of the Act.[3]

Thus, the questions presented by the petition for review and the motion to dismiss include the reviewability and, if reviewable, the validity of the Commission's orders. The question of reviewability necessarily involves a determination of whether we have jurisdiction to review such orders under Section 19(b) of the Natural Gas Act, which section clearly specifies when the jurisdiction of this Court may attach and to what extent that jurisdiction may be exercised. In Magnolia Petroleum Company v. Federal Power Commission, supra, we observed that this provision of the Act contemplates a review by this Court of definitive orders entered after hearing and upon completion of the administrative process, and the test of reviewability there enunciated is controlling here.

Applying this test to the issues presented, we think it plain that these orders are in no proper sense definitive orders as contemplated by Section 19(b), but they are instead mere procedural steps taken at the inception of and not upon the completion of the administrative process. All that the Commission did in the exercise of its regulatory jurisdiction was to enter preliminary, interlocutory orders which do not bear upon the merits of the controverted fundamental issues which must ultimately be adjudicated by the Commission. The review provisions of Section 19(b) should not be construed as authorizing review of every order that the Commission may make albeit of a mere procedural character, for, as was so clearly stated by the Supreme Court in speaking of a like review provision of the Federal Power Act, "Such a construction, affording opportunity for constant delays in the course of the administrative proceeding for the purpose of reviewing mere procedural requirements or interlocutory directions, would do violence to the manifest purpose of the provision." Federal Power Commission v. Metropolitan Edison Co., 304 U.S. 375, 383–384, 58 S.Ct. 963, 967, 82 L.Ed. 1408.

The petitioner is thus before this Court without a record, without a single established fact or finding, and without evidence, asking us to exercise our power of review when, in fact, there is no "order" to review. This being the situation, it is plain that petitioner is prematurely seeking review of the Commission's action without having first exhausted the prescribed administrative remedy. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638. This case thus falls squarely within the well established rule which requires that there be no judicial intervention until administrative action has reached its complete development. Aircraft & Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 767, 67

---

3. "Upon the filing of such transcript such [Court of Appeals] shall have exclusive jurisdiction to affirm, modify, and set aside such order in whole or in part." Section 19(b), Natural Gas Act.

S.Ct. 1493, 91 L.Ed. 1796; Union Oil Company v. Federal Power Commission, 5 Cir., 236 F.2d 816.

The conclusion we have reached that this Court has no jurisdiction to review these orders at this time renders it both inappropriate and unnecessary to pass upon the other questions raised by petitioner's assignments of error. Accordingly, the petition must be and the same is hereby dismissed.

JOHN R. BROWN, Circuit Judge, dissenting. For dissenting opinion see 236 F.2d 785.

PER CURIAM.

As neither of the judges who concurred in the decision of the Court in the above numbered and entitled cause is of opinion that the petition for rehearing should be granted, it is ordered that the said petition be, and the same hereby is, denied.

JOHN R. BROWN, Circuit Judge, dissents.