**Roy LEE, Trustee for Hassie Hunt Trust, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

**No. 15749.**

United States Court of Appeals Fifth Circuit.

June 30, 1956.

Rehearing Denied Aug. 21, 1956.

William S. Richardson, Dallas, Tex., Robert E. May, Washington, D. C., Ralph B. Shank, Shank, Dedman & Payne, Dallas, Tex., Wheat, May & Shannon, Washington, D. C., for petitioner.

Willard W. Gatchell, Gen. Counsel for Federal Power Commission, Lambert McAllister, Asst. Gen. Counsel, Washington, D. C., C. Louis Knight, David S. Lichtenstein, Washington, D. C., for respondent.

Before BORAH, RIVES and BROWN, Circuit Judges.

BORAH, Circuit Judge.

This is a companion case to Shank v. Federal Power Commission, 5 Cir., 236 F.2d 830. Here, as there, petitioner has invoked the jurisdiction of this Court under Section 19(b) of the Natural Gas Act, 15 U.S.C.A. § 717r(b), to review and set aside an order of the Federal Power Commission issued on May 2, 1955.

The material facts are these: On October 7, 1954, and in compliance with the regulations promulgated in the Commission's series of 174-Orders, but under protest and with jurisdictional reservations, petitioner filed with the Commission certain of its gas sales contracts. These contracts, covering its sales of natural gas to nine pipeline companies, were designated "rate schedules", and reflected

rates and charges in effect on June 7, 1954, for the sale of gas produced by petitioner in the Maxie Field, Acadia Parish, Louisiana. The only one of these contracts with which we are here concerned was with Louisiana Natural Gas Company and it contained a provision giving petitioner the right to terminate sales thereunder if the purchaser did not meet a bona fide offer at a higher price from another transporter. Thereafter and on October 14, 1954, petitioner filed with the Commission, under like jurisdictional reservations, an application for an initial certificate of public convenience and necessity requesting authorization for the continued sale of natural gas to the nine pipeline companies under its previously filed contracts. In addition, petitioner on the same day also filed as an "initial rate schedule" its contract dated September 14, 1954, for the sale of gas to Transcontinental Gas Pipe Line Corporation together with an application for initial certificate of public convenience and necessity covering sales thereunder. This contract of September 14 had been entered into after Louisiana Natural had failed to meet a bona fide offer from Transcontinental for the purchase of petitioner's gas from the Maxie Field. It covered the sale of all of the natural gas which had been dedicated to the performance of the contract with Louisiana Natural as well as gas produced from two wells located on certain additional acreage which had not been so dedicated. However, both the rate schedule and the application for certificate of public convenience and necessity were in terms restricted to such sales under the Transcontinental Contract as were made from the two wells which were not dedicated to the performance of the Louisiana Natural contract. In this connection it should be noted that on November 15, 1954, petitioner made a formal request for emergency authority to sell gas to Transcontinental pending disposition of its application for a certificate of public convenience and necessity covering the sales from the two named wells. By a

telegram dated December 7, 1954, the Commission granted petitioner authority to sell gas from these two nondedicated wells "without prejudice to such final Commission action as may be warranted by the record." Upon receipt of this authorization, petitioner began selling such gas to Transcontinental.

Thereafter on March 21, 1955, petitioner filed four separate and additional documents with the Commission and each of these filings was made under like protest and with jurisdictional reservations. The first filing was designated "Amendment No. 1" to the October 14, 1954, application for certificate of public convenience and necessity covering petitioner's sales from the Maxie Field to nine purchasers and petitioner therein requested that this initial application be amended so as to authorize the sale of gas to Louisiana Natural until April 30, 1955, but not thereafter. The second filing was a notice of termination of rate schedule in which petitioner stated that effective April 30, 1955, the contract with Louisiana Natural would be terminated according to its terms, i. e. by reason of the purchaser's failure to meet a bona fide offer from another transporter. The third filing was the aforementioned September 14, 1954, contract with Transcontinental which on refiling was again designated an "initial rate schedule". By its terms this proposed rate schedule was to commence on May 1, 1955, and was limited to sales of petitioner's gas to Transcontinental from acreage which was previously dedicated to the performance of the Louisiana Natural contract. The fourth and remaining filing was an application for a certificate of public convenience and necessity to cover the aforementioned sales to Transcontinental from the acreage which had theretofore been dedicated to Louisiana Natural and which were to commence on May 1, 1955.

In the meantime, the Commission had on February 16, 1955, set down for hearing petitioner's application for a certificate covering the sales to Transcontinental from the two nondedicated wells and

this hearing was had on March 25, 1955.[1] Five days thereafter and by reason of the fact that no action had been taken by the Commission on the application for a certificate to cover the sales to Transcontinental which were scheduled to commence on May 1, 1955, petitioner applied for temporary emergency authority to sell such gas, which request was denied.

On May 2, 1955, and pursuant to previous notice, the Commission convened another and separate hearing for the purpose of considering petitioner's application for an initial certificate of public convenience and necessity in which it had requested authority to continue the sale of gas to the nine pipeline companies under the contracts which were in effect on and after June 7, 1954. At that hearing, Louisiana Natural, Transcontinental and others petitioned to intervene. Louisiana Natural also moved to dismiss or in the alternative to sever petitioner's Amendment No. 1 to the application. And in the same proceeding over objections petitioner was denied an opportunity to introduce certain proffered evidence. This hearing was recessed and no final disposition was made of the petitions to intervene, of petitioner's objections to the ruling on the introduction of evidence, and of Louisiana Natural's motion to dismiss or sever.

On May 2, 1955, the Commission issued the order in question which it had previously adopted on April 20, 1955. Although this order coincides with the date of the recessed hearing, it has no relation thereto, but reflects instead certain affirmative action by the Commission in reference to petitioner's rate schedule filings. By this order the Commission: (1) rejected the "Notice of Termination" of petitioner's contract with Louisiana Natural on the ground that it constituted, in effect, a proposed abandonment of sale and service without the permission and approval of the Commission, and (2) rejected as a proposed rate filing the rate schedule covering the sales which

were to commence on May 1, 1955, under the contract with Transcontinental for the reason that the proposed sales of gas to Transcontinental constituted a new service without a certificate of public convenience and necessity under Section 7(c) of the Act. Thereafter and in compliance with the requirements of Section 19(a) of the Act, petitioner on May 27, 1955, filed an application for rehearing of the May 2 order, which application in due course was denied.

Following this action by the Commission, petitioner filed the within petition for review requesting this Court to vacate and set aside the May 2, 1955, order and is here contending that the order is "unlawful" because: (1) it misinterprets Section 7(b) of the Natural Gas Act; (2) it was entered without hearing or opportunity for hearing; (3) it does not contain any of the essential statutory findings; (4) it was issued subsequent to the thirty days' notice period provided in the Act; (5) it results in retroactive rate-making contrary to the Act; and (6) the Commission has no authority to "reject" rate schedule filings.

Following the filing of the within petition for review, the Commission certified to this Court a transcript of the record upon which the order complained of was entered. The documents certified were petitioner's rate schedule filings of October 7 and October 14, 1954, and March 21, 1955, petitioner's notice of termination of the contract with Louisiana Natural, the order of May 2, 1955, and petitioner's application for rehearing thereof, and the order denying the application for rehearing. Thereupon, petitioner filed a motion to require correction of imperfect record, contending that the record as certified is incomplete in that it does not contain all of the documents upon which petitioner intends to rely in this proceeding, and without which this Court cannot pass upon the merits of the issues presented by the petition to re-

---

1. As of the date on which this petition for review was filed, no final or definitive action on this application had been taken by the Commission.

view.[2] Upon consideration of the motion and the Commission's answer and objections thereto, this Court on November 16, 1955, denied the motion without prejudice to petitioner's urging or renewing it upon the hearing and argument of this case on the merits.

Petitioner has availed itself of this privilege and is asking us to reconsider our former ruling, but we think it plain that the documents which petitioner would have us consider do not constitute any part of the transcript of the record upon which the order complained of was entered as provided by Section 19(b) of the Natural Gas Act. Instead, they constitute a part of the record of entirely different and separate proceedings before the Commission, which proceedings petitioner concededly does not seek to review in the instant case. We therefore adhere to our former ruling and petitioner's renewed motion to correct the record is in all respects denied.

Having concluded that petitioner may not introduce into the record material which was not before the Commission when it issued its order of May 2, 1955, there remain for decision the questions of the reviewability and, if reviewable, the validity of this order. We think that the legal principles in respect to the reviewability of the order here involved are identical with those presented in Shank v. Federal Power Commission, supra, and what we said there is dispositive of this case. Accordingly, and for the reasons there stated, we conclude that the petition for review must be dismissed for lack of jurisdiction.

Dismissed.

For dissenting opinion see 236 F.2d 785.

## On Petition for Rehearing

PER CURIAM.

JOHN R. BROWN, Circuit Judge, dissenting.

As neither of the judges who concurred in the decision of the Court in the above numbered and entitled cause is of opinion that the petition for rehearing should be granted, it is ordered that the said petition be, and the same is hereby, denied.

JOHN R. BROWN, Circuit Judge, dissents.

2. The documents requested include: the Commission's series of 174-Orders as amended (see Magnolia Petroleum Company v. Federal Power Commission, 5 Cir., 236 F.2d 785, for a discussion of this series of orders which were issued following the decision by the Supreme Court in Phillips Petroleum Company v. State of Wisconsin, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035) ; petitioner's application for rehearing of Order 174-A ; the letters of transmittal which accompanied each of petitioner's filings of rate schedules; petitioner's application for certificates of public convenience and necessity, together with Amendment No. 1 to one of said applications, and a letter of the Commission with reference to the amendment; petitioner's applications for emergency authority to sell natural gas and the Commission's replies thereto; the Commission's notice of the May 2, 1955, hearing upon one of petitioner's requests for certificate of public convenience and necessity, together with the several petitions to intervene filed therein and petitioner's answers to the petitions of intervention, the official stenographic report of the May 2 proceeding, petitioner's exhibits supporting its offer of proof which was rejected at the hearing, Louisiana Natural's motion to dismiss the amendment to the certificate, and petitioner's answer to said motion.